IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Danny Lee Ford, II,<br><br>Plaintiff,<br><br>v.<br><br>United States Department of Agriculture; Farm Service Agency; Brooke L. Rollins, *in her official capacity as Secretary of Agriculture*; William "Bill" Beam, *in his official capacity as Administrator of the Farm Service Agency*; Jefferson E.B. JEB Wilson, *in his official capacity as South Carolina State Executive Director of the Farm Service Agency*,<br><br>Defendants. | Case No. 8:26-cv-03869-JDA-MHC<br><br>**OPINION AND ORDER** |

This matter is before the Court on Plaintiff's emergency motion for temporary restraining order, preliminary injunction, and expedited administrative-record schedule (the "Motion"). [Doc. 4.]

On September 4, 2026, the Court denied the Motion "to the extent Plaintiff seeks an ex parte temporary restraining order under Rule 65(b) of the Federal Rules of Civil Procedure." [Doc. 12.] However, the Court "defer[red] ruling on the Motion to the extent Plaintiff seeks preliminary injunctive relief under Rule 65(a)," and it ordered Defendants to respond the Motion. [*Id.*] On September 15, 2026, Defendants filed their response. [Doc. 22; *see also* Doc. 23.] On September 16, 2026, Plaintiff filed a reply. [Doc. 27.] The Motion is now ripe for review.

## BACKGROUND

Plaintiff Danny Lee Ford II, proceeding pro se, seeks judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–06, of a final decision of the South Carolina Farm Service Agency State Committee ("STC") excluding Plaintiff from the 2026 Anderson County Farm Service Agency ("FSA") County Committee ("COC") election for Local Administrative Area I ("LAA I"). [Doc. 3-1.] Plaintiff alleges that STC's decision "rests on two stated grounds: (a) an adverse Marketing Assistance for Specialty Crops ('MASC') program-compliance determination . . . and (b) Plaintiff's prior partisan candidacy for the United States Senate, which ended on August 11, 2026." [*Id.* ¶ 3.] Plaintiff "asks the Court to review the final agency action on the administrative record, hold unlawful the legal rules the agency actually applied if they are contrary to governing law or unexplained, and preserve Plaintiff's ability to appear on the 2026 ballot while that review occurs." [*Id.* ¶ 6.] On September 3, 2026, Plaintiff filed the Motion seeking "immediate temporary relief preserving his ability to appear on the 2026 [COC] ballot for LAA 1 while [the] Court reviews the final agency action." [Doc. 4.]

## APPLICABLE LAW

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (internal quotation marks omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (internal quotation marks omitted). Because granting a motion for preliminary injunctive relief "requires that a

district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way[,] [t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted). Accordingly, the decision whether to grant a preliminary injunction is committed to the equitable discretion of the district court. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010); *Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

The current standard for granting preliminary injunctive relief is set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Under *Winter*, to obtain a preliminary injunction, the moving party must demonstrate:

> 1) he is likely to succeed on the merits,
>
> 2) he will suffer irreparable harm if the preliminary injunction is not granted,
>
> 3) the balance of equities favors him, and
>
> 4) the injunction is in the public interest.

555 U.S. at 20; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). Moreover, *Winter* requires that each preliminary injunction factor "be satisfied as articulated." *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (internal quotation marks omitted). Therefore, the movant bears a heavy burden in seeking a preliminary injunction. *Id*. at 321.

## **DISCUSSION**

For the reasons stated herein, the Court concludes that Plaintiff is entitled to preliminary injunctive relief. The Court addresses the *Winter* factors in turn.

**Likelihood of Success on the Merits**

As previously stated, Plaintiff's suit concerns STC's final decision excluding Plaintiff from the 2026 Anderson County FSA COC election for LAA I based on two stated grounds "consistent with the requirements of 7 CFR Part 7 and FSA Handbook 15-AO policy." [Doc. 3-1 at 1.] First, STC stated that "nominees must be in compliance with program requirements to be eligible to be a nominee" and that Plaintiff was "found ineligible for MASC program benefits due to non-compliance with eligibility rules," citing FSA Handbook provision 15-AO ¶ 107E.[1] [*Id.*] Second, STC stated that "COC . . . members, delegates, alternates[,] and County Office employees shall not be a member of, **or candidate** for, any Federal, State[,] or county office filled by partisan election under the law" and that Plaintiff was a candidate for U.S. Senator for the Republican Party "during the time frame in which the COC determined nomination eligibility," citing FSA Handbook provisions 15-AO ¶ 92A[2] and 22-PM ¶ 399A.[3] [*Id.* at 2 (emphasis in original).]

---

[1] FSA Handbook provision 15-AO ¶ 107E states, in relevant part,

> CED shall review appropriate handbook requirements with nominees before placing them on ballots. Items to review include, but are not limited to:
>
> - conflict of interest
> - Hatch Act
> - Prohibited business practices.

[Doc. 23-6 at 3.]

[2] FSA Handbook provision 15-AO ¶ 92A provides, in relevant part, "COC members and alternates shall follow 22-PM for . . . restrictions on political activity." [Doc. 23-5 at 4.]

[3] FSA Handbook provision 22-PM ¶ 399A states, in relevant part,

Plaintiff contends that the grounds supporting STC's determination are arbitrary and capricious, not in accordance with the law, or in excess of authority under 5 U.S.C. § 706(2)(A) and (C). [*Id.* at 8–10.] The Court concludes, based on the existing record, that Plaintiff is likely to succeed on the merits of his claims.

***Review Under the APA***

The APA provides for judicial review of a final agency action. 5 U.S.C. §§ 702, 704; *see Ergon-W. Va., Inc. v. EPA*, 896 F.3d 600, 609 (4th Cir. 2018); *Roland v. U.S. Citizenship and Immigration Servs*., 850 F.3d 625, 629 n.3 (4th Cir. 2017). Pursuant to the APA, a court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "contrary to constitutional right, power, privilege, or immunity," *id*. § 706(2)(B); or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. § 706 (2)(C).

"The scope of review under the arbitrary and capricious standard is narrow," and the Court may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between

---

A. COC and CMC members, delegates, alternates, and County Office employees shall not:

1. Be a member of or candidate for any Federal, State, or county office filled by partisan election under the law. . . .

[Doc. 23-7 at 3.]

Paragraph 400 further provides that *employees* who violate the restrictions described in paragraph 399 may be subject to disciplinary action up to and including removal from office. [*Id.* at 4.]

the facts found and the choice made." *Id.* (internal quotation marks omitted). In reviewing the agency's explanation, the Court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal quotation marks omitted). An agency action is arbitrary and capricious when it "relie[s] on factors which Congress has not intended it to consider, . . . fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* Importantly, however, the Court "should not attempt itself to make up for such deficiencies" and "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* In this regard, the Court must judge the agency's action solely on the grounds the agency itself invoked at the time of the decision. *Calcutt v. FDIC*, 598 U.S. 623, 624 (2023).

As a general matter, "claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record[.]" *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp*., 524 F. Supp. 2d 642, 660 (D. Md. 2007); *see also Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." (internal quotation marks omitted)). This "reflects the recognition that further judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government and should normally be avoided." *Dep't of Comm. v. New York*, 588 U.S. 752, 780 (2019) (internal quotation marks omitted).

***The MASC Ground***

With respect to the MASC determination, Plaintiff contends that the STC decision did not identify language in 15-AO ¶ 107E, 7 C.F.R. § 7.8,[4] or 7 C.F.R. § 7.18[5] wherein

---

[4] 7 C.F.R. § 7.8 provides, in relevant part:

> (d) To be eligible, nominees must be farmers or ranchers who:
>
> (1) Participated in a program administered within an area under the jurisdiction of the county committee; or
>
> (2) At the time of the deadline to submit nominations, cooperate as evidenced in county office records.

and

> (g) *If elected,* nominees must meet all the eligible requirements in § 7.18 to serve as county committee members.

7 C.F.R. § 7.8(d), (g) (emphasis added).

[5] 7 C.F.R. § 7.18 provides as follows:

> (a) To be eligible to hold office as a county committee member or an alternate to any county office, a person must meet the conditions specified in this section.
>
> (b) Such person must:
>
> (1) Meet the eligibility for nomination criteria specified in § 7.8;
>
> (2) Reside in the local administrative area in which the election is held, in cases where a State line, a county line, or a local administrative area boundary runs through a farm, eligible farmers and ranchers residing on such farm may hold office in the county and local administrative area in which the farm has been determined to be located for program participation purposes;
>
> (3) Not be ineligible based on prohibited political activities, as specified in the Uniform Guidelines;

(4) Not have been dishonorably discharged from any branch of the armed services; removed for cause from any public office; convicted of any fraud, larceny, embezzlement, or felony, unless any such disqualification is waived by the State committee or the Deputy Administrator;

(5) Not have been removed as a county committee member, alternate to any county office, or as an employee for: Failure to perform the duties of the office; committing, attempting, or conspiring to commit fraud; incompetence; impeding the effectiveness of any program administered in the county; refusal to carry out or failure to comply with the Department's policy relating to equal opportunity and civil rights, including the equal employment policy, or interfering with others in carrying out such policy; or for violation of official instructions, unless any such disqualification is waived by the State committee or the Deputy Administrator;

(6) Not have been disqualified for future service because of a determination by a State committee that during previous service as a county committee member, alternate to any county office, or as an employee of the county committee, the person has: Failed to perform the duties of such office or employment; committed, attempted, or conspired to commit fraud; impeded the effectiveness of any program administered in the county; in the course of their official duties, refused to carry out or failed to comply with the Department's policy relating to equal opportunity and civil rights, including the equal employment policy, or interfered with others in carrying out such policy; or violated official instructions, unless any such disqualification is waived by the State committee or the Deputy Administrator;

(7) Not be an employee of the U.S. Department of Agriculture during the term of office;

(8) Not be a sales agent or employee of the Risk Management Agency or their affiliates during the term of office;

(9) Not be already serving as a county committee member with 1 or more years remaining in their current term of office; and

(10) Not have served more than 9 consecutive years (three consecutive terms as an elected member) as an elected or

an adverse MASC determination would constitute a categorical COC nominee disqualification. [Doc. 3 ¶ 37; *see* also ¶¶ 48, 55.] Nor do the agency's cited authorities provide a definition of "prohibited business practices" clearly encompassing separately appealable MASC benefits determinations. [*Id*. ¶ 37.]

In response, Defendants concede that the FSA authorities regarding the nexus between "prohibited business practices" and committee eligibility admittedly are "less clear." [Doc. 22 at 14.] Defendants further concede that the applicable regulations (7 C.F.R. Part 7) do not reference either "prohibited business practices" or violations of MASC program requirements. [*Id*.] Nor does FSA Handbook 15-AO include the term "program violations." [*Id*.] In fact, Defendants cannot identify a single reference within the regulations or other guidance expressly providing that violations of MASC program requirements are prohibited business practices disqualifying a potential COC candidate. [*Id*.]

In reply, Plaintiff contends that, although Defendants provide additional reasoning for disqualifying Plaintiff based on the adverse MASC determination, that reasoning was not provided at the time of the ineligibility finding. [Doc. 27 at 4.]

***The Political Activity Ground***

With respect to the political activity determination, Plaintiff contends that STC failed to identify language in 15-AO ¶ 92A or 22-PM ¶ 399A establishing that a partisan candidacy that ended before the final eligibility determination would create a continuing

appointed county committee member just prior to the current election in which elected office is sought. After a break in service of at least 1 year, a member who has previously served 9 consecutive years may run for re-election or be re-appointed.

bar for the remainder of the COC election cycle. [Doc. 3 ¶ 39.] In addition, Plaintiff argues that, although 7 C.F.R. § 7.18(b)(3) references the Uniform Guidelines, STC's decision instead referenced 22-PM ¶ 399A. [*Id.* ¶ 49.] However, STC failed to explain why 22-PM ¶ 399A applies to COC *nominees* (as opposed to COC members, delegates, alternates, and County Office employees) or why it "establishes the duration imposed here." [*Id.*; *see also* ¶ 54.]

In response, Defendants argue that "[a]lthough FSA has not set an official date at which a nominee's eligibility is to be judged for the COC election cycle, it was rational to determine that a nominee who was ineligible as of the date the nominations closed would be excluded from the ballot even if they became eligible before eligibility determinations were finalized." [Doc. 22 at 13.]

In reply, Plaintiff contends that "[n]othing in [7 C.F.R. Part 7] says political eligibility is permanently frozen on the nomination deadline," and he points to the distinction between the *nomination* requirements of § 7.8 and the *hold-office* requirements of § 7.18. [Doc. 27 at 2.] In addition, Plaintiff argues that 22-PM ¶ 399A's eligibility guidelines apply only to "COC/CMC members, delegates, alternates, and County Office Employees," and it contains no provision barring a previous candidate for the entire COC election cycle. [*Id.*] To the contrary, Plaintiff's FSA-669A provides that, "if elected and a conflict of interest exists, the nominee will 'resign such position.'" [*Id.* at 3 (quoting Doc. 23-10 at 1).]

***Success on the Merits***

The Court concludes that Plaintiff is likely to succeed on the merits of his claims. In particular, STC's stated rationales lack a logical anchor in the relevant FSA regulations

and guidance, and the Court cannot "supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43.

Regarding the MASC ground, Defendants themselves concede that they cannot identify a single reference within the regulations or other guidance expressly providing that violations of MASC program requirements are prohibited business practices disqualifying a potential COC candidate. [Doc. 22 at 14.] Moreover, the FSA Handbook provision in which STC relied—15-AO ¶ 107E—merely directs the county executive director to "review appropriate handbook requirements with nominees" and is not itself an eligibility rule. As such, STC's determination regarding MASC program requirements finds no support in the FSA regulations or guidance.

Regarding the political activity ground, STC made its initial eligibility determination on August 6, 2026, while Plaintiff was a political candidate for the U.S. Senate. [Doc. 3-1 at 3.] Even assuming STC could arbitrarily treat August 3, 2026—"the date nominations closed"—as a conclusive bar to eligibility for the entire COC election cycle [*see* Doc. 22 at 13],[6] STC made no finding regarding whether Plaintiff constituted a *COC member, delegate, alternate, or County Office Employee* as required by 22-PM ¶ 399A. Further,

---

[6] The Court finds this conclusion spurious. Plaintiff withdrew from the Senate race before eligibility determinations were finalized, and Plaintiff's nomination form provides that, if elected and a conflict of interests exists, the nominee will "resign such position." [Doc. 23-10.] *Cf. Sullivan v. Farmers Home Admin.*, 691 F. Supp. 927, 931 (E.D.N.C. 1987) (noting that the final regulations governing Farmers Home Administration County Committee member elections, 7.C.F.R. § 2054.1104(j), provide that "persons temporarily ineligible to serve on County Committees, including persons involved in partisan political activities, may be candidates for County Committees so long as they certify that, if elected, they will cure their ineligibility"). It is unclear whether Plaintiff was *ever* ineligible due to his partisan political activities, but if he was, he apparently cured the defect.

STC failed to explain why 7 C.F.R. § 7.18(3), governing *an elected nominee's* eligibility to *hold office*, applies to Plaintiff. *See* 7 C.F.R. § 7.8(g) ("*If elected*, nominees must meet all the eligible requirements in § 7.18 to serve as county committee members." (emphasis added)). In sum, the regulations cited do not appear to support a finding of ineligibility.

**Irreparable Harm**

To demonstrate a right to preliminary relief, Plaintiff must make a "clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F3d 197, 216 (4th Cir. 2019) (internal quotation marks omitted). The claimed harm must also be irreparable—that is, harm that "cannot be fully rectified by the final judgment after trial." *Id*. (internal quotation marks omitted). Upon review, the Court finds that Plaintiff has sufficiently shown that the harm he seeks to avoid is imminent and irreparable.

Here, the deadline for compiling biographies on all approved candidates is September 21, 2026. [Doc. 23-2 at 12.] The biographies will be featured in October and November County Office newsletters or bulletins. [*Id.*] As such, Plaintiff argues that he is currently being excluded from candidate-specific opportunities. [Doc. 27 at 4–5.] The Court agrees. If this Court were to deny Plaintiff's motion for preliminary relief, Plaintiff would be excluded from being featured as an approved candidate in the County Office newsletters and bulletins prior to the election. More importantly, money damages could not restore Plaintiff's lost opportunity to appear as a candidate on the 2026 LAA I ballot after the election process concludes.

**Balance of Equities**

When considering whether to grant a preliminary injunction, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 542 (1987).

As previously stated, harm to Plaintiff is irreparable in that, if the Court were to deny Plaintiff's motion for preliminary relief, Plaintiff would lose the chance to appear on the ballot during this election cycle. Conversely, harm to Defendants could be cured. For example, if Plaintiff were to be elected, Defendants could remove Plaintiff from office should a conflict of interest—or other disqualifying circumstance—arise. [*See, e.g.,* Doc. 23-10 (providing that, if elected and a conflict of interests arises, the nominee will resign his position); 7 C.F.R. § 7.28 (governing removal from office); Doc. 23-7 at 4 (22-PM ¶ 400A, providing that "[e]mployees who violate the restrictions described in paragraph 399 may be subject to disciplinary action up to and including removal from office").] As such, the balance of the equities favors Plaintiff.

**Public Interest**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *see also Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 500 (1941).

Here, the public interest favors granting preliminary relief to Plaintiff. According to Defendants' own evidence, COC members serve as the "link between [the] agricultural

community and the [United States Department of Agriculture].” [Doc. 23-9.] Indeed, local elections are a touchstone of democratic participation.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Motion to the extent Plaintiff seeks preliminary injunctive relief under Rule 65(a) of the Federal Rules of Civil Procedure and orders the following relief:

- Defendants shall update the final file submitted to the vendor to ensure Plaintiff’s name will appear on the ballot for the 2026 Anderson County Farm Service Agency County Committee regular election for LAA I and shall include him on the list of eligible candidates so that his biography may be featured in October and November County Office newsletters and bulletins.[7]

- Defendants shall further refrain from taking any affirmative action that would make it impossible for Plaintiff to be added to the ballot.

- Defendants shall preserve all relevant data and records related to Plaintiff.

- Defendants shall file a sworn declaration from a knowledgeable FSA official stating: (a) whether Plaintiff currently appears in COC Web, FSA-593, or the candidate data to be sent to the vendor; (b) whether the final vendor file has been transmitted; (c) the date and time at which addition of a candidate would become technically unavailable or require a supplemental/vendor correction; and (d) what correction or supplemental mechanisms remain available within four days of the entry of this Order.

- Defendants shall produce the administrative record within seven days of the entry of this Order.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin

[7] In the event Plaintiff is elected, Defendants have available mechanisms to remove Plaintiff from office should the Court ultimately uphold STC’s ineligibility finding. [*See, e.g.,* Doc. 23-10 (providing that, if elected and a conflict of interests arises, the nominee will resign his position); 7 C.F.R. § 7.28 (governing removal from office); Doc. 23-7 at 4 (22-PM ¶ 400A, providing that “[e]mployees who violate the restrictions described in paragraph 399 may be subject to disciplinary action up to and including removal from office”).]

United States District Judge

September 21, 2026
Greenville, South Carolina

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.